UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JEFFERSON PARK ASSOCIATES, L.P.

                                    Plaintiff,

        vs.

QUALITROL COMPANY LLC

                                    Defendants.
_____

**COMPLAINT**

Civil Action No.:

**TRIAL BY JURY DEMANDED**

        Plaintiff Jefferson Park Associates, L.P ("Plaintiff"), by its attorneys, **KNAUF SHAW LLP**, for its Complaint, alleges as follows:

## PRELIMINARY STATEMENT

        1.      In this action, Plaintiff complains of the discharge(s), release(s), spill(s) and/or disposal(s) (together the "Disposals") of hazardous substances (the "Contamination"), including but not limited to Trichloroethylene ("TCE") and other volatile organic chemicals ("VOCs")  by Defendant Qualitrol Company LLC ("Qualitrol") from Qualitrol's industrial facility located at 1385 Fairport Road, Fairport, NY 14450 (the "Qualitrol Site") causing a continuing off-site groundwater and soil vapor contamination plume (the "Plume") emanating onto and running through the Jefferson Park senior housing facility, located at 120 Jefferson Avenue, Fairport, New York 14450 ("Jefferson Park"), which is beneficially owned and operated by Plaintiff and adjacent to the Qualitrol Site.

        2.      In 2018, the New York State Department of Health ("NYSDOH") and New York State Department of Environmental Conservation ("NYSDEC") declared the Qualitrol Site to be a significant threat to human health or the environment "based on the off-site migration of contaminants in the groundwater plume, and the potential for human exposure to site-related

contaminants via soil vapors."  See NYSDEC Fact Sheet, Remedy Proposed for Brownfield Site Contamination (August 2020) attached as Exhibit A.

3.      Qualitrol proceeded to perform some remedial activities purported to address the Contamination and the Plume, including one treatment of the contaminated groundwater Plume (both on-site and off-site) with injections (the "Injections") of commercially available bio-amendments, zero valent iron, and a commercially available amendment with the goal of promoting the anaerobic degradation of the Contamination in the Plume.

4.      The remedial activities required by NYSDEC also required Qualitrol to perform, among other things, interim remedial measures consisting of the installation of sub-slab depressurization systems ("SSDSs") at 13 residential properties further downgradient of Jefferson Park to prevent soil vapor exposure to the Contamination from the Plume under and into these 13 residential homes.

5.      Upon information and belief,, these 13 residential homes still have active SSDSs because the Plume continues to migrate under their properties since the Plume has not been remediated on the Jefferson Park property.

6.      Based on a number of rounds of sampling following the Plume Injections, the Plume has not in fact degraded from the failed Injections program.

7.      Plaintiff has requested that Qualitrol perform additional Injections over a wider area covering the entire Plume, but Qualitrol has refused to perform additional remediation to degrade the Plume.

8.      Qualitrol is remediating the Qualitrol Site as a "participant" in the New York State Brownfield Cleanup Program ("BCP," New York Environmental Conservation Law ("ECL") Article 27 Title 14).   A "participant" is a BCP party who caused the contamination and is a

responsible party for the cleanup of a BCP site, as opposed to a "volunteer" in the BCP, who did not cause the BCP site contamination.

9.      The BCP requires all parties, but particularly "participants" such as Qualitrol, to stop Contamination at their own property boundary and prevent off-site Contamination.  Qualitrol has failed to comply with this provision of the BCP as required by ECL § 27-1411(2).[1]

10.     Moreover, despite the sensitive elderly residential population at Jefferson Park and the fact that the same Plume impacting 13 residential downgradient properties received SSDSs, NYSDEC did not require, and Qualitrol did not install, an SSDS at Jefferson Park.

11.     On December 28, 2023, NYSDEC surprisingly issued Qualitrol a Certificate of Completion ("COC"), pursuant to the New York State Brownfield Cleanup Program ("BCP"), which declared that Qualitrol had satisfactorily completed the remediation of the Qualitrol Site.

12.     Qualitrol was issued the COC despite the continuing undiminished presence of the Plume emanating through the Jefferson Park property and Contamination from soil vapors potentially impacting Jefferson Park.  Attached as Exhibit B is a map depicting the approximate location of the Plume relative to the Qualitrol Site and Jefferson Park.

13.     The Plume and Contamination from soil vapors potentially impacting Jefferson Park continue to represent a significant threat to human health or the environment and may present an imminent and substantial endangerment to the health of the residents of Jefferson Park if left unaddressed.

---

[1]      ECL §27-1411(2) – "A remedial work plan shall provide for the development and implementation of a remedial program for such contamination within the boundaries of such brownfield site; provided, however, that a participant shall also be required to provide in such work plan for the development and implementation of a remedial program for contamination that has emanated from such site." *See also* applicable regulations at 6 N.Y.C.R.R. §375-1.8(d)(iii) which states: "(iii) plume containment/stabilization.  All remedies shall, to the extent feasible, prevent the further migration of groundwater plumes, whether on-site or off-site; provided, however that a volunteer in the Brownfield Cleanup Program shall only be obligated to evaluate the feasibility of containing the plume on-site."

14.     To mitigate the potential impact to the residents of Jefferson Park, Plaintiff intends to proceeding with installing an SSDS at Jefferson Park (the "Jefferson Park SSDS") at an estimated cost of at least $56,000.

15.     Plaintiff seeks, *inter alia*, injunctive relief and compensatory damages pursuant to the citizen suit provisions of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 7002(A)(1)(B) (42 U.S.C. § 6972(A)(1)(B)), Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) §§ 107 and 113(b) (42 U.S.C. §§ 9607, 9613(b)), 28 U.S.C. § 1331, and common law theories of private nuisance including: (1) an order directing Qualitrol to perform additional Injections to remediate the Plume impacting Jefferson Park; (2) Plaintiff's environmental response costs associated with responding to the Plume and soil vapor Contamination, including but not limited to the costs of the Jefferson Park SSDS; (3) Plaintiff's damages, including, but not limited to Plaintiff's environmental consultant costs and diminution of the value of the Jefferson Park property as a result of the Plume; and (4) Plaintiff's attorneys fees associated with this action and Plaintiff's response to the Plume and soil vapor Contamination.

## PARTIES

16.     Upon information and belief, Defendant Qualitrol is a Delaware limited liability company and owns and operates the Qualitrol Site in the Town of Perinton, County of Monroe and State of New York.

17.     Upon information and belief, predecessors and/or affiliates of Qualitrol have owned and/or operated the Qualitrol Site since 1962.

18.     Plaintiff Jefferson Park Associates, L.P is a New York limited partnership with a offices at 1000 University Avenue, Suite 500, Rochester, New York 14607.

19.     Plaintiff is the beneficial owner and operator of Jefferson Park.

## THE QUALITROL SITE

20.     Upon information and belief, the Qualitrol Site is approximately 14.8 acres and the facility itself is approximately 67,500 square feet. It is located in a residential/commercial/light manufacturing and wooded area approximately one mile west of the center of the village of Fairport. The original Qualitrol Site building was built in 1955.

21.     Upon information and belief, Qualitrol manufactures equipment for power transmission and distribution systems, instrumentation, and control and monitoring systems for all sizes and types of transformers. Its manufacturing processes included machining and powder coatings.

22.     From 1962 to 1984, Qualitrol reportedly utilized a septic tank leach field system for process wastewater discharges. From 1962 to 1970, the wastewater was reportedly discharged to a septic system located near the southeast corner of the Qualitrol Site building (the "Building"). During 1970, the septic system was reportedly replaced with a larger, two-tank system. During 1979, one leach field was reported to have been abandoned and a new leach field was constructed adjacent to the south end of the Qualitrol Site and discharges to this leach field are reported to have continued until 1984.

23.     Upon information and belief, before 1979, Qualitrol's wastewater was directed to a 2,000-gallon setting tank located behind the Building on the east side. Effluent from the settling tank was later directed to a 400-gallon tank with a submersible pumping unit.

24.     Upon information and belief, the leach field operated until 1984 when the facility was connected into the Monroe County municipal wastewater treatment system, and sanitary wastes were directed to the Monroe County Publicly Owned Treatment Works.

25.     Upon information and belief, Qualitrol constructed an addition to the Building in 2012. During construction preparation, three underground concrete septic tanks were discovered located within the planned addition's footprint.

26.     As discussed below, subsequent remedial investigations identified the leach fields as likely sources of TCE detected in groundwater at the Qualitrol Site and off-Site.

27.     These sources are the result of discharges to the two leach fields of TCE solvents used for parts cleaning during their operations from approximately 1962 to 1984.

## THE REMEDIAL INVESTIGATION

28.     Following the discovery of the septic tanks and leach field, remedial investigations ("RI") were conducted between 2013 and 2018.

29.     The RI noted groundwater is present at the Qualitrol Site, with the water table at a depth of 2 to 10 feet below grade surface, and elevated concentrations of TCE and its anaerobic degradation daughter product, cis-1,2-dichloroethene (1,2-DCE) were detected in groundwater and soil vapor.

30.     On the Qualitrol Site itself, shallow groundwater was shown to be impacted by TCE andcis-1,2-DCE and the sources of the TCE were shown to be from the former leach fields on the Qualitrol Site.

31.     On-site sub-slab soil vapor samples exceeded NYSDOH criteria requiring mitigation which resulted in modifications to the Building's heating, ventilation and air conditioning (HVAC) system to prevent on-site soil vapor exposure.

32.     Subsequent on-site sampling identified TCE and carbon tetrachloride soil vapor contamination.

33.    The RI demonstrated that the on-Site TCE groundwater Plume had migrated onto and through the Jefferson Park property and into residential areas further downgradient to the west-southwest of the Qualitrol Site.

34.    The RI concluded that residents in homes situated downgradient from the Qualitrol Site may be exposed to TCE or its daughter products through soil vapors into their homes based on the flow of contaminated groundwater in the Plume.

35.    In response, because a potential risk to human health was associated with the off-Site soil vapors that had been detected in sub-slab soils and basement indoor air at certain residences, thirteen (13) SSDSs were installed at off-Site residences from 2017 to 2019 to mitigate exposure risk to soil vapors.

36.    The Jefferson Park facility, which is located west of the Qualitrol Site, and through which the Plume is migrating (*see* Exhibit B), is a senior residential facility.  It remains totally unclear why NYSDEC did not require Qualitrol to install an SSDS in the Jefferson Park facility, and, despite Plaintiff's repeat requests, why Qualitrol has not installed an SSDS at Jefferson Park.

37.    Around February 2018, NYSDEC made a determination that the Qualitrol Site was a significant threat to human health or the environment based on the off-site migration of Contamination in the groundwater Plume, and the potential for human exposure to the Contamination via soil vapors.

38.    Nevertheless, Jefferson Park has been treated more like an adjacent commercial property than another residential property, which should also have received an SSDS due to the sensitive elderly residential population.

**THE CONTINUING TCE PLUME**

39.     In May 2018, as an interim remedial measure, Qualitrol installed an on-Site perimeter groundwater treatment barrier designed to terminate further migration of TCE in the groundwater Plume off-Site.

40.     In March 2020, Qualitrol submitted a Remedial Alternative Assessment Report ("RAAR") to NYSDEC with recommended remedial actions with the goal of remediating, among other things, the TCE Plume.

41.     The RAAR maintained the TCE groundwater Plume was expected to be mitigated from further migration off-Site by the Qualitrol Site perimeter passive groundwater treatment barrier installed in May 2018.

42.     The RAAR also maintained that the SSDSs installed in the 13 residences, as an interim remedial measure, had been demonstrated to mitigate soil vapor Contamination in all of the residences, and further stated that "no other SSDSs [within the Plume] have been planned, requested by residents, or needed."

43.     The residential Jefferson Park facility, which is within the Plume, requested from Qualitrol and NYSDEC a SSDS in response to the draft RAAR, but did not receive it.

44.     To remediate the TCE Plume, the RAAR recommended a combination of "monitored natural attenuation," which is essentially doing nothing, but monitoring the Contamination indefinitely, and limited Injections.

45.     The limited proposed Injections included two on-site Injections and four off-site Injections along Jefferson Avenue.

46.     The off-site Injections were to be coupled with evaluation of the performance of the Injections by conducting groundwater monitoring quarterly for a period of one year.

47.     The four off-Site locations proposed for the Injections were in the Plume *downstream* of Jefferson Park, meaning they would have no impact on the residential Jefferson Park facility.

48.     Plaintiff's environmental consultant and counsel objected to the failure of the RAAR to recommend active remediation of the Plume running through Jefferson Park.   In particular, Plaintiff's consultant noted the failure to consider recent groundwater data in fully delineating the Plume, failure to include Injections targeted at remediating the Plume in the area of Jefferson Park, and failing to provide for a SSDS at Jefferson Park as had been done for other residential properties impacted by the Plume.

49.     In February 2021, indoor air and subslab soil vapor sample results confirmed the presence of TCE and tetrachloroethylene ("PCE") in soil vapor under the Jefferson Park facility. The indoor air TCE results from February 2021 showed increases in the indoor air TCE results as compared to soil vapor sampling results from March 2018.

50.     The February 2021 soil vapor contamination results sit firmly within the "monitor" recommendation within the NYSDOH soil vapor mitigation guidance.  Of note, the NYSDOH soil vapor guidance indicates that for the recommendation to "monitor" soil vapor contamination that "monitoring is an interim measure required to evaluate exposures related to soil vapor intrusion until contaminated environmental media are remediated."

51.     Here, known contaminated environmental media impacting the Jefferson Park senior residences from an off-site polluter remains unremediated.  Failing to protect the senior residents of Jefferson Park from a known source, from a known polluter, potentially impacting a sensitive population in the same manner as downgradient single family residences is confounding.

52.     In February 2021, Qualitrol submitted a draft Remedial Action Work Plan ("RAWP") to NYSDEC for the remediation of the impacts from the Qualitrol site.

53.     With regard to the impacts of the Plume on Jefferson Park, the remedial plan proposed in the RAWP included one set of Injections to be performed along an eighty (80) foot transect within the Plume adjacent to the Jefferson Park property to the north with ongoing monitoring to assess performance. *See* Exhibit C, location of Injections (Injection Transect B).

54.     The environmental consultants for Jefferson Park questioned the adequacy of only an 80 foot transect for Injections adjacent to Jefferson Park, recommending the transect be extended another 60 feet to the northwest and that additional volumes of Injections be used, so that Contamination to the west and northwest impacting Jefferson Park would be degraded, as measured by groundwater monitoring wells MW-40 and MW-41.  *See* Exhibit C.

55.     In conditionally approving the RAWP on June 21, 2021, NYSDEC Condition 73 stated - "It is indicated in the text that the enhanced bioremediation injections will be a singular event. Additional injections will be contingent upon the groundwater collected. The quarterly groundwater sampling will be a minimum 1 year. Again, this will be contingent upon the groundwater data collected."

56.     Thus, as a condition to the RAWP approval, additional Injections were contemplated based on the subsequent groundwater data.

57.     In its RAWP decision, NYSDEC required one set of Injections to be performed only within the 80-foot transect proposed in the RAWP.  *See* Exhibit C, location of Injections (Injection Transect B).

58.     Upon information and belief, the Injections were performed beginning the week of July 19, 2021.

10

59.     The effectiveness of the Injections impacting Jefferson Park would be measured by TCE and other VOC concentrations in groundwater monitoring wells GW-40 and G-41 with the baseline data taken on or about July 6, 2021 and received by Plaintiff on or about July 15, 2021.

60.     The groundwater sample data collected for TCE Contamination in groundwater monitoring wells since the July 2021 baseline sampling is as follows (values are in micrograms per liter):

**TCE Concentrations (ug/liter)**

|           | MW-41 | MW-40 |
|-----------|-------|-------|
| 7/6/2021  | 17.5  | 5.54  |
| 9/13/2021 | 17.5  | 5.3   |
| 12/15/2021| 18.5  | 6.35  |
| 7/14/2022 | 19    | 4.2   |
| 3/18/2024 | 14    | 6.5   |

61.     The NYSDEC regulatory standard for TCE in groundwater is 5.0 micrograms per liter and, as illustrated by the data summary above, as of March 2024, almost three years after the Injections, the remediation of the off-site Contamination in the Plume has demonstratively failed because no substantial progress has been made in reducing the concentration of TCE in the Plume emanating through Jefferson Park.

62.     Plaintiff's environmental consultant contacted the NYSDEC Project Manager for the Qualitrol Site to express Plaintiff's concern that the remediation to date has not worked and to request: (1) additional injections in the two wells closer to the Jefferson Park building; and (2) that NYSDEC and NYSDOH require Qualitrol to install a SSDS in the Jefferson Park facility to prevent any potential soil vapor intrusion into the facility.

63.     With regard to the Injections, the NYSDEC project manager expressed the position that the Injections performed to date require more time to have an impact and stated it could be "years" before progress is shown, even though the TCE concentrations within the Plume remained

at about the same levels as when the Qualitrol Site was deemed a significant threat in 2018 because of the Contamination from the Plume impacting off-site properties.

64.     NYSDEC again did not require the installation of an SSDS at Jefferson Park and has shockingly allowed Qualitrol to violate ECL § 27-1411(2) by allowing off-site Contamination to continue to migrate beyond the Qualitrol Site boundaries.

65.     On most BCP sites, even when the remedial party is only a volunteer (i.e. a party who did *not* cause the contamination and is not responsible for remediating off-site contamination), NYSDOH and NYSDEC require far more than the annual groundwater monitoring that Qualitrol has performed.

66.     In addition, NYSDEC has only required Qualitrol to perform two rounds of indoor air and subslab monitoring inside the Jefferson Park building, once in 2018 and once in 2021, despite the fact that both rounds of sampling concluded that ongoing "monitoring" is required since there could be a future crack in the building slab over time that could cause soil vapor intrusion. Two rounds of sampling is wholly insufficient to establish whether the Injections are reducing the soil vapor Contamination at Jefferson Park; instead, such sampling should occur at least once every heating season.

67.     In its May 2, 2024 response to Plaintiff's Notice of Intent to Sue pursuant to RCRA requesting additional Injections and an SSDS at Jefferson Park, NYSDEC stated that "no further action will be taken by [NYSDEC] at this time."

## RCRA NOTICE

68.     RCRA requires that Plaintiff provide at least 90 days' notice for actions brought under RCRA § 7002(a)(1)(B), 42 U.S.C. §6972(a)(1)(B), pursuant to RCRA § 7002(b)(2), 42 U.S.C. § 6972(b)(2), and the requirements of 40 C.F.R. Part 254.

69.     Plaintiff served a notice of intent to bring a civil action ("NOI") upon Qualitrol and NYSDEC pursuant to RCRA § 7002(a)(1)(B), 42 U.S.C. §6972(a)(1)(B), containing the notice requirements of 40 C.F.R. § 254.3 and served pursuant to 40 C.F.R. § 254.2, as follows:

a.  The NOI was mailed to Timothy Walsh, Regional Director of NYSDEC Region 8 via registered mail, return receipt requested, postmarked March 19, 2024, and addressed to his offices at 6274 East Avon-Lima Road, Avon, New York 14414-9519;

b.  The NOI was mailed to Basil Seggos, Commissioner of NYSDEC, via registered mail, return receipt requested, postmarked March 19, 2024, and addressed to his offices at 625 Broadway, 14th Floor, Albany, New York 12233-1010;

c.  The NOI was mailed to Qualitrol via registered mail, return receipt requested, postmarked March 19, 2024 and addressed to the site manager at the Qualitrol Site at 1385 Fairport Road, Fairport, New York 14450;

d.  The NOI was mailed to the registered agent for Qualitrol via certified mail postmarked March 19, 2024;

e.  The NOI was mailed to Michael S. Regan, Administrator of the USEPA, via certified mail and addressed to his office, postmarked March 19, 2024;

f.  The NOI was mailed to Lisa F. Garcia, the Acting Regional Administrator of Region 2 of the United States Environmental Protection Agency ("USEPA"), the

Regional Administrator of the USEPA for the Region in which the Qualitrol Site is located, addressed to her office via certified mail postmarked March 19, 2024;

g.    The NOI was mailed to David Vitale, the Deputy Commissioner for the Division of Remediation and Materials Management for the NYSDEC, an authorized representative of the NYSDEC charged with responsibility for solid waste management in the State for New York, addressed to his office via certified mail postmarked March 19, 2024.

70.    More than 90 days have passed since Plaintiffs served the NOI upon Qualitrol and NYSDEC and all of the other agencies.

## PROCEDURAL ISSUES

71.    Plaintiff has no adequate remedy at law, and no previous application has been made for the relief sought in this action.

72.    This Court has subject matter jurisdiction over the First, Second, and Third Causes of Action of this Complaint, pursuant to CERCLA §§ 107 and 113(b) (42 U.S.C. §§ 9607, 9613(b)), 28 U.S.C. § 1331 and RCRA § 7002(A)(1)(B) (42 U.S.C. § 6972(A)(1)(B)).

73.    This Court has supplemental jurisdiction over the state law claim in the Fourth Cause of Action of this Complaint pursuant to 28 U.S.C. § 1367, since this cause of action arises out of a common nucleus of facts.

74.    Venue is proper in this federal District Court pursuant to CERCLA §§ 107, 113(b) (42 U.S.C. §§ 9607, 9613(b)), and RCRA § 7002(A)(1)(B) (42 U.S.C. § 6972(A)(1)(B)), because the Disposals occurred and the Contamination is located within the Western District of New York, and pursuant to 28 U.S.C. § 1391, because the Jefferson Park real property, which is the subject

of this action, is located, and the events related to the claims occurred, within the Western District

of New York.

75.     In addition, the Declaratory Judgements Act, 28 U.S.C. § 2201, authorizes this

Court to grant declaratory relief in this matter.

**AS AND FOR A FIRST CAUSE OF ACTION**
**PURSUANT TO RCRA § 7002(A)(1)(B),**
**PLAINTIFF ALLEGES AS FOLLOWS**

76.     Plaintiff repeats and realleges the allegations of paragraphs "1" through "74" of this

Complaint, as if set forth in this paragraph at length.

77.     In 2018, NYSDEC declared the Qualitrol Site to be a significant threat to human

health or the environment based on the off-site migration of the Contamination in the groundwater

Plume, and the potential for human exposure to site-related Contamination via soil vapors.

78.     The Contamination in the off-site groundwater Plume has not substantially reduced

since 2018 when the Qualitrol Site was declared to be a significant threat and, as a result, still

represents a significant threat to human health and the environment.

79.     On March 19, 2024, Plaintiff issued formal notices of intent to file suit under RCRA

to Qualitrol via registered mail, return receipt requested, with copies to the Administrator of the

USEPA, the Regional Administrator for USEPA Region 2, and the NYSDEC, among others.

80.     The citizen suit provision of RCRA allows any "person" to commence an action

"against any person, including the United States and any other governmental instrumentality or

agency, to the extent permitted by the eleventh amendment to the Constitution, and including any

past or present generator, past or present transporter, or past or present owner or operator of a

treatment, storage, or disposal facility, who has contributed or who is contributing to the past or

present handling, storage, treatment, transportation, or disposal of any solid . . . waste which may

present an imminent and substantial endangerment to health or the environment…." 42 U.S.C. § 6972(a)(1)(B).

81.     Pursuant to 42 U.S.C. § 6903(15), Plaintiff is a "person" who may bring citizen suits pursuant to the provisions of RCRA, 42 U.S.C. § 6972.

82.     Pursuant to 42 U.S.C. § 6903(15), Defendants are each a "person" and subject to the citizen suit provisions of RCRA, 42 U.S.C. § 6972.

83.     Solid waste is defined as "any … discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities."  42 U.S.C. §6903(27).

84.     The Disposals and resulting Contamination constitute a solid waste and a hazardous waste.

85.     Qualitrol is a generator of the solid waste resulting in the Contamination.

86.     Qualitrol owns and operates the Qualitrol Site which has caused the Contamination.

87.     Neither the NYSDEC nor the United States Environmental Protection Agency is diligently pursuing an action or otherwise requiring further remediation to address the imminent and substantial endangerment from the Contamination impacting Jefferson Park.

88.     The Qualitrol Site has released dangerous and noxious chemicals and hazardous substances, including TCE and other VOCs, that continue to contaminate the Qualitrol Site and extend beyond the boundaries of the Qualitrol Site and contaminate and otherwise impact the residents of Jefferson Park and are in violation of ECL § 27-1411(2).

89.     The continuing presence of the Contamination from the Disposals emanating off-site from the Qualitrol Site may present an imminent and substantial endangerment to health or

the environment because the Contamination of groundwater and soil vapor from the Plume persists at Jefferson Park.

90.     This Court should issue an injunction, pursuant to 42 U.S.C. § 6972(a), directing Qualitrol to abate this imminent and substantial endangerment in perpetuity.

91.     This Court should also award Plaintiff the costs it has incurred to attempt to address the Contamination and the costs of this litigation (including reasonable attorney and expert witness fees), pursuant to 42 U.S.C. § 6972(e).

**AS AND FOR A SECOND CAUSE OF ACTION
FOR COST RECOVERY UNDER CERCLA § 107,
PLAINTIFF ALLEGES AS FOLLOWS:**

92.     Plaintiff repeats and realleges the allegations of paragraphs "1" through "91" of this Complaint, as if set forth in this paragraph at length.

93.     The Qualitrol Site is a "facility," as defined in CERCLA §101(9) (42 U.S.C. §9601(9)).

94.     Qualitrol and/or Qualitrol's predecessors are Operators as defined by CERCLA §101(20) (42 U.S.C. §9601(20)), of the Property, at the time of Disposal of the Contaminants.

95.     The Contamination represents "hazardous substances" as defined by CERCLA §101(14) (42 U.S.C. §9601(14)).

96.     Pursuant to CERCLA §107(a) (42 U.S.C. §9607(a)), Qualitrol and/or Qualitrol's predecessors are persons who are strictly liable and responsible for investigation, cleanup, remediation, and removal of the Contamination, and Plaintiff's associated past and future response costs.

97.     Plaintiff has incurred and will continue to incur response costs as a result of the Contamination caused by Qualitrol, including, but not limited to the cost of the Jefferson Park

SSDS and the costs for Plaintiff's environmental consultants and attorneys in response to the Contamination.

98.     All response costs incurred by Plaintiff in connection with the Contamination have been consistent with the National Contingency Plan, and are recoverable pursuant to CERCLA §107(a) (42 U.S.C. §9607(a)).

99.     Accordingly, Qualitrol is strictly, jointly and severally liable under CERCLA §107(a), 42 U.S.C. §9607(a) for all response costs incurred by the Plaintiff, and all response costs necessary in the future, to remediate the Qualitrol Site and any potential off-site impacts, including the impacts to Jefferson Park.

100.    This Court should direct Qualitrol to pay the response costs incurred by Plaintiff, and declare that they are liable for Plaintiff's future response costs for addressing the Contamination at Jefferson Park.

**AS AND FOR A THIRD CAUSE OF ACTION
FOR CONTRIBUTION UNDER CERCLA,
PLAINTIFF ALLEGES AS FOLLOWS:**

101.    Plaintiff repeats and realleges the allegations of paragraphs "1" through "100" of this Complaint, as if set forth in this paragraph at length.

102.    Pursuant to CERCLA, including CERCLA § 113(f)(1) (42 U.S.C. § 9613(f)(1)), CERCLA § 107(a) (42 U.S.C. § 9607(a)), and/or otherwise, Qualitrol must contribute their equitable share of the response costs incurred by Plaintiff to investigate and remediate the Contamination at and emanating from the Qualitrol Site.

103.    This Court should direct Qualitrol to pay its equitable share of response costs incurred by Plaintiff, and declare that Qualitrol is liable for its equitable share of Plaintiff's future response costs for the Property and any potential off-site impacts.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**FOR PRIVATE NUISANCE AGAINST QUALITROL,**
**PLAINTIFF ALLEGES AS FOLLOWS:**

104.    Plaintiff repeats and realleges the allegations of paragraphs "1" through "101" of this Complaint, as if set forth in this paragraph at length.

105.    NYSDEC declared the Qualitrol Site to be a significant threat to human health or the environment based on the off-site migration of Contamination in the groundwater plume, and the potential for human exposure at Jefferson Park to site-related Contamination via soil vapors.

106.    Qualitrol (including their officers, agents, servants, and/or employees), by negligently, recklessly, or intentionally and unreasonably failing to promptly and adequately investigate and remediate the Contamination impacting Jefferson Park, has unreasonably and substantially interfered with the use and enjoyment of Plaintiff's property.

107.    As a result of this private nuisance, Plaintiff has been damaged, including but not limited to the costs for environmental remediation, environmental consultants, and diminution of the value of the Jefferson Park property due to the off-site Contamination from the Plume emanating through the Jefferson Park property unabated.

108.    By reason of this private nuisance, this Court should issue an injunction, directing Defendants Qualitrol to remediate the Contamination from the Plume and deem Qualitrol liable for all of the damages to Plaintiffs proximately caused by the Contamination.

**AS AND FOR AN FIFTH CAUSE OF ACTION**
**FOR A DECLARATORY JUDGMENT,**
**PLAINTIFF ALLEGES AS FOLLOWS:**

109.    Plaintiff repeats and realleges the allegations of paragraphs "1" through "108" of this Complaint, as if set forth in this paragraph at length.

110.    The Declaratory Judgements Act, 28 U.S.C. § 2201, authorizes this Court to grant declaratory relief in this matter.

111.    Plaintiff and Qualitrol have an actual controversy sufficient to allow this Court to declare their rights.

112.    As set forth above, Qualitrol is liable for the past and future costs of, or its equitable share of the costs of, remediation of the Contamination from the Qualitrol Site impacting Jefferson Park.

113.    Accordingly, Plaintiff requests that the Court issue a Declaratory Judgment that Qualitrol is liable for the past and future costs of, or their equitable share of the costs of, investigation and remediation of the Contamination from the Qualitrol Site impacting Jefferson Park..

**WHEREFORE**, Plaintiff demands judgment against Qualitrol as follows:

a.    Declaring that Qualitrol is jointly and severally responsible, or alternatively liable for its equitable share, of Plaintiff's costs associated with the environmental response to the Contamination at and emanating from the Qualitrol Site and requiring Qualitrol to pay those costs to Plaintiff.

b.    Declaring that Qualitrol is responsible for Plaintiff's future damages and environmental response costs and to fully investigate and remediate the Contamination impacting Jefferson Park.

c.    Awarding Plaintiff their damages and response costs, with interest.

d.    Granting a permanent injunction ordering Qualitrol to further investigate and remediate the Contamination at and emanating from the Qualitrol Site impacting Jefferson Park, including, but not limited to performing additional Injections to remediate the Plume.

e.     Awarding Plaintiff its attorneys' fees, experts' fees and other costs and expenses.

f.     Awarding such other damages and further relief as this Court deems just, proper and

equitable.

Dated: July 15, 2024                         /s/ Linda R. Shaw
                                    **KNAUF SHAW LLP**
                                    *Attorneys for Plaintiffs*
                                    Linda R. Shaw, Esq., and
                                      Dwight E. Kanyuck, Esq., of Counsel
                                    2600 Innovation Square
                                    100 South Clinton Avenue
                                    Rochester, New York 14604
                                    Tel: (585) 546-8430