UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JEFFERSON PARK ASSOCIATES, L.P.,

                Plaintiff,

    v.

QUALITROL COMPANY LLC,

                Defendant.

**DECISION AND ORDER**

6:24-CV-06439 EAW

---

## INTRODUCTION

Plaintiff Jefferson Park Associates, L.P. ("Plaintiff") filed this action seeking injunctive relief and damages against defendant Qualitrol Company LLC ("Defendant"), alleging violations of the Resource Conservation and Recovery Act, 42 U.S.C. § 7002 *et seq.* ("RCRA"), the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 *et seq.* ("CERCLA"), and New York state-law claims for private and public nuisance arising from Defendant's operation of an industrial facility in Fairport, New York. (Dkt. 32).

Presently before the Court is Defendant's motion for judgment on the pleadings. (Dkt. 41). For the following reasons, Defendant's motion is denied.

## BACKGROUND

The following facts are taken from Plaintiff's amended complaint unless otherwise indicated. (Dkt. 32). As required, Plaintiff's allegations are treated as true.

Defendant owns and operates an industrial facility located at 1385 Fairport Road, Fairport, New York ("Qualitrol site") in the Town of Perinton in Monroe County, New York. (*Id.* at ¶¶ 1, 16). Plaintiff is the owner and operator of Jefferson Park, a senior housing facility located at 120 Jefferson Avenue, in Fairport, New York, adjacent to the Qualitrol site. (*Id.* at ¶¶ 1, 19). The Qualitrol site was built in 1955 and is approximately 14.8 acres with a facility of approximately 67,500 square feet. (*Id.* at ¶ 20). At the Qualitrol site, Defendant manufactures equipment for power transmission and distribution systems, instrumentation, and control and monitoring systems for transformers. (*Id.* at ¶ 21).

From 1962 until 1984, Defendant reportedly utilized a septic tank leach field system to process wastewater discharges. (*Id.* at ¶ 22). In 1970, the septic system was reportedly replaced with a larger, two-tank system and in 1979, one leach field was abandoned and a new leach field was constructed. (*Id.*). Discharges from the newer leach field continued through 1984. (*Id.*). Upon information and belief, sometime in 1984, the Qualitrol site was connected into the Monroe County municipal wastewater treatment system, and sanitary wastes were directed to the Monroe County Publicly Owned Treatment Works. (*Id.* at ¶ 24)

During construction performed at the Qualitrol site in 2012, three underground concrete septic tanks were discovered. (*Id.* at ¶ 25). As a result of the discovery of the septic tanks and leach field, remedial investigations were conducted at the site between 2013 and 2018. (*Id.* at ¶ 28). The remedial investigations noted the presence of groundwater at the Qualitrol site, with the water table at a depth of 2 to 10 feet below grade

surface, and elevated concentrations of Trichloroethylene ("TCE") and its anaerobic degradation daughter product, cis-1,2-dichloroethene (1,2-DCE) were detected in groundwater and soil vapor. (*Id.* at ¶ 29). Modifications were made to Defendant's heating, ventilation, and air conditioning systems to prevent on-site soil vapor exposure. (*Id.* at ¶ 31). On-site sampling conducted thereafter reflected the presence of TCE and carbon tetrachloride soil vapor contamination, and that an on-site TCE plume had migrated onto Plaintiff's property and into other adjacent residential areas. (*Id.* at ¶ 33). Because of the risks to human health, 13 sub-slab depressurization systems ("SSDSs") were installed at off-site residences in the area between 2017 and 2019. (*Id.* at ¶ 35). The New York State Department of Environmental Conservation ("NYSDEC") did not require Defendant to install an SSDS at Plaintiff's facility, however, nor did Defendant agree to do so despite Plaintiff's repeated requests for this relief. (*Id.* at ¶¶ 36, 37).

In February 2018, the New York State Department of Health ("NYSDOH") and NYSDEC determined that the Qualitrol site was a significant threat to human health or the environment as a result of the off-site migration of contaminants in the groundwater and the risk of potential human exposure to contamination through soil vapors. (*Id.* at ¶ 38). To be considered a "significant threat," there must be a finding that the contaminants disposed of or coming from a site "result in, or are reasonably foreseeable to result in, . . . a significant adverse impact to public health, where the site is near residences, recreational facilities, public buildings or property, school facilities, places of work or worship, or other areas where individuals or water supplies may be present, and the [NYSDOH] has determined that the presence of contaminants on such site pose a significantly increased

risk to the public health." (*Id.* at ¶ 3 (quoting 6 NYCRR § 375-2.7(a)(vi); 6 NYCRR § 375-3.7)).

In May 2018, as an interim remedial measure, Defendant installed a perimeter groundwater treatment barrier, which was designed to terminate further migration of TCE in the groundwater. (*Id.* at ¶ 40). In March 2020, Defendant prepared a Remedial Alternative Assessment Report ("RAAR") to NYSDEC, which contained recommended remedial actions addressed to the remediation of the TCE plume. (*Id.* at ¶ 41). The RAAR also reflected that the interim remedial measure of installing 13 SSDSs in surrounding residences demonstrated the mitigation of soil vapor contamination, but indicated that "no other SSDSs have been planned, requested by residents, or needed." (*Id.* at ¶ 43). Plaintiff requested that Defendant and NYSDEC install an SSDS at the Jefferson Park location but still did not receive it. (*Id.* at ¶ 44). The RAAR also recommended a combination of "monitored natural attenuation" and limited injections of commercially available bio-amendments, zero valent iron, and a commercially available amendment. (*Id.* at ¶ 45). The proposed injections included two on-site and four off-site along Jefferson Avenue, which were to be coupled with quarterly groundwater monitoring for one year. (*Id.* at ¶ 47). The four off-site locations were located downstream from Plaintiff. (*Id.* at ¶ 48).

Plaintiff's environmental consultant and counsel objected to the lack of active remediation within Jefferson Park, the failure to consider groundwater data to permit injections targeted at remediation of Jefferson Park, and the decision not to provide for a SSDS at Jefferson Park, as was done for the other affected residential properties. (*Id.* at ¶ 49).

Indoor air and subslab soil vapor sample results conducted in February 2021, confirmed the presence of TCE and tetrachloroethylene ("PCE") in soil vapor under the Jefferson Park facility as well as increases in indoor air TCE as compared to the soil vapor sampling results taken in March 2018. (*Id.* at ¶ 50). In February 2021, Defendant submitted a draft Remedial Action Work Plan ("RAWP") to NYSDEC containing its proposals for the remediation of the impacts from the Qualitrol site. (*Id.* at ¶ 53). The RAWP proposed to include one set of injections adjacent to Jefferson Park with ongoing monitoring. (*Id.* at ¶ 54). Plaintiff's consultants recommended that the transect be extended another 60 feet to the northwest with additional injections to be used, but the NYSDEC conditionally approved the RAWP on June 21, 2021, stating: "It is indicated in the text that the enhanced bioremediation injections will be a singular event. Additional injections will be contingent upon the groundwater collected. The quarterly groundwater sampling will be a minimum 1 year. Again, this will be contingent upon the groundwater data collected." (*Id.* at ¶¶ 55, 56). Upon information and belief, the injections began during the week of July 19, 2021. (*Id.* at ¶ 59).

On December 28, 2023, NYSDEC issued Defendant a Certificate of Completion ("COC"), pursuant to the New York State Brownfield Cleanup Program ("BCP"), which declared that Defendant satisfactorily completed remediation of the Qualitrol site. (*Id.* at ¶ 11).

Testing performed in March 2024 demonstrated that no substantial progress was made in reducing the concentration of TCE in the area of Jefferson Park. (*Id.* at ¶ 62). Plaintiff's environmental consultant again contacted the NYSDEC project manager to

express concern and specifically request additional injections into two wells closer to the Jefferson Park building and that Defendant be required to install a SSDS within the Jefferson Park facility. (*Id.* at ¶ 63). The NYSDEC project manager informed Plaintiff that the injections performed required additional time to have an impact and that it could be years before progress was evident. (*Id.* at ¶ 64).

NYSDEC again did not require the installation of an SSDS at Jefferson Park or other additional remediation. (*Id.* at ¶ 65). On most cleanup programs, NYSDOH and NYSDEC require far more than the annual groundwater monitoring that Defendant has been required to perform. (*Id.* at ¶ 66). In addition, NYSDEC has only directed Defendant to perform two rounds of indoor air and sub slab monitoring inside the Jefferson Park building, once in 2018 and once in 2021, despite the fact that both rounds of sampling demonstrated that ongoing "monitoring" was required and that more frequent monitoring was necessary. (*Id.* at ¶ 67).

In response to Plaintiff's Notice of Intent to Sue pursuant to RCRA, which requested additional injections and the installation of an SSDS at Jefferson Park, on May 2, 2024, NYSDEC stated that "no further action will be taken by [NYSDEC] at this time." (*Id.* at ¶ 68).

Plaintiff's amended complaint alleges two statutory causes of action against Defendant: violation of RCRA § 7002(A)(1)B) and violation of CERCLA § 107. Plaintiff also alleges common-law claims for public and private nuisance and seeks declaratory judgment.

## PROCEDURAL HISTORY

Plaintiff alleges that it served a notice of intent to sue upon all necessary parties as required by RCRA, and that by the end of the statutorily required notice periods, neither the United States Environmental Protection Agency nor the State of New York initiated enforcement proceedings. (*See id.* at ¶¶ 69-71). On July 15, 2024, Plaintiff commenced this action (Dkt. 1), and on October 11, 2024, Defendant filed an answer (Dkt. 12) and motion for judgment on the pleadings (Dkt. 28). On November 5, 2024, Plaintiff filed an amended complaint, which remains the operative pleading. (Dkt. 32). The Court denied Defendant's motion for judgment on the pleadings as moot. (Dkt. 36).

On November 19, 2024, Defendant filed its answer (Dkt. 39) to the amended complaint and another motion for judgment on the pleadings (Dkt. 41). On December 11, 2024, Plaintiff filed its opposition (Dkt. 43), and on December 18, 2024, Defendant filed its reply (Dkt. 44).

## DISCUSSION

### I.    Legal Standard for Motion for Judgment on the Pleadings

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (internal quotation marks and citation omitted).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted).  "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

II.    **Defendant's Motion for Judgment on the Pleadings**

In its motion for judgment on the pleadings, Defendant argues that its significant investigation and remediation under the supervision and approval of the NYSDEC and NYSDOH resulted in a multi-element remedy determination issued by the NYSDEC. It argues that Plaintiff never took any independent action to address its concerns, nor did it incur any qualified response costs, and that as a result, Defendant is entitled to judgment on the pleadings as to each of Plaintiff's claims. Plaintiff counters that it is entitled to relief, including installation of an SSDS at Jefferson Park and reimbursement of environmental response costs associated with responding to the contamination, and contends that it has plausibly alleged the necessary elements of its asserted claims.

The Court will address each claim below.

A.    **RCRA Claim**

"RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste." *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 483 (1996). RCRA's citizen suit provision permits "any person" to "commence a civil action on his own behalf" to enforce against violations of its requirements. *See* 42 U.S.C. § 6972(a). In "conferring standing to the fullest extent permitted by Article III, Congress sought to maximize the number of potential enforcers of environmental regulations." *Williams v. Ala. Dep't of Transp.*, 119 F. Supp. 2d 1249, 1256 (M.D. Ala. 2000); *DMJ Assocs., L.L.C. v. Capasso*, 228 F. Supp. 2d 223, 229 (E.D.N.Y. 2002) ("Congress clearly intended citizen's suits to be an integral part of the enforcement efforts for this federal environmental law, supplementing where necessary the actions of state and

federal agencies, and offering a judicial forum to avoid undue delay."). Nonetheless, "[p]rior to filing a citizen's suit, a plaintiff must provide notice to the Environmental Protection Agency and appropriate state officials, to afford them the first opportunity to enforce the statute, and to potential defendants, to allow them to comply voluntarily with RCRA." *DMJ Assocs., L.L.C.*, 228 F. Supp. 2d at 229 (citing 42 U.S.C. § 6972(b)); *see Williams*, 119 F. Supp. 2d at 1256 (same). Once these requirements are satisfied, "a citizen is free to file a federal court action with certain narrow exceptions specifically enumerated in the statute." *DMJ Assocs., L.L.C.*, 228 F. Supp. 2d at 229.

"Congress expressly authorized citizens to bring imminent and substantial endangerment claims in the federal courts as 'part of a comprehensive scheme designed to deal consistently with a serious national problem.'" *DMJ Assocs., L.L.C.*, 228 F. Supp. 2d at 229 (quoting *Williams*, 119 F. Supp. 2d at 1256). That congressional authorization is found in § 6972(a)(1)(B) which provides, in pertinent part, as follows:

> any person may commence a civil action . . . against any person, . . . including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment[.]

42 U.S.C. § 6972(a)(1)(B).

Accordingly, a plaintiff must satisfy three elements to state a claim under this section:

> (1) the defendant was or is a generator or transporter of solid or hazardous waste or owner or operator of a solid or hazardous waste treatment, storage or disposal facility, (2) the defendant has contributed or is contributing to the

handling, storage, treatment, transportation, or disposal of solid or hazardous waste, as defined by RCRA, and (3) that the solid or hazardous waste in question may pose an imminent and substantial endangerment to health or the environment.

*Prisco v. A & D Carting Corp.*, 168 F.3d 593, 608 (2d Cir. 1999).

The first two elements are not in dispute on Defendant's motion; Defendant's motion focuses exclusively on whether Plaintiff has alleged an "imminent and substantial endangerment to health or the environment." (*See* Dkt. 41-2 at 13-19).[1]

"The Second Circuit has given an expansive construction to RCRA," *87th St. Owners Corp. v. Carnegie Hill-87th St. Corp.*, 251 F. Supp. 2d 1215, 1217 (S.D.N.Y. 2002); *see Simsbury-Avon Pres. Club, Inc. v. Metacon Gun Club, Inc.*, 575 F.3d 199, 210 (2d Cir. 2009) ("[T]he 'imminent and substantial endangerment' standard is a broad one[.]"), and "plaintiffs 'need not establish an incontrovertible imminent and substantial harm to health and the environment,'" *Hudson Riverkeeper Fund, Inc. v. Atl. Richfield Co.*, 138 F. Supp. 2d 482, 488 (S.D.N.Y. 2001) (quoting *Christie-Spencer Corp. v. Hausman Realty Co.*, 118 F. Supp. 2d 408, 419 (S.D.N.Y. 2000)).

Harm is "imminent" if "a 'risk of threatened harm is present.'" *Simsbury-Avon Pres. Club, Inc.*, 575 F.3d at 210 (quoting *Dague v. City of Burlington*, 935 F.2d 1343,

---

[1] Defendant also argues that Plaintiff is not entitled to a monetary award under RCRA and to the extent it seeks such relief, it is subject to dismissal. But Plaintiff concedes that monetary damages and an award for cleanup costs are not recoverable under RCRA and clarifies that it is only seeking an injunction pursuant to this statute to abate the endangerment and the recovery of its legal and environmental consultant costs associated with its attempts to address the contamination, which are recoverable pursuant to 42 U.S.C. § 6972(a) and 6972(e). (Dkt. 43 at 14).

1356 (2d Cir. 1991), *rev'd in part on other grounds*, 505 U.S. 557 (1992)).  Imminent threats need not be "emergency-type situations"; rather, "[a]n 'imminent hazard' may be declared at any point in the chain of events which may ultimately result in harm to the public."  *Dague*, 935 F.2d at 1356 (quoting *Envtl. Def. Fund, Inc. v. EPA*, 465 F.2d 528, 535 (D.C. Cir. 1972)); *see Meghrig*, 516 U.S. at 486 (stating that the threat must be "present *now*, although the impact of the threat may not be felt until later" (quotation omitted)).  Plaintiff alleges that the TCE soil vapor was deemed by the NYSDEC to be "a significant threat to human health and/or the environment" based on the migration of contaminants in the groundwater and potential for human exposure to contaminants through soil vapors.  It argues that the harm is ongoing and has not been remedied by the mitigation measures that were installed only at 13 impacted residences but not at Plaintiff's facility.  Plaintiff's allegations establish that Defendant's activities pose a sufficiently "imminent" harm at this stage of the proceedings.

"[A]n endangerment is 'substantial' if it is serious."  *Simsbury-Avon Pres. Club, Inc.*, 575 F.3d at 210.  "An endangerment is 'substantial' where there is reasonable cause for concern that someone or something may be exposed to risk of harm if prompt remedial action is not taken."  *Lewis v. FMC Corp.*, 786 F. Supp. 2d 690, 707 (W.D.N.Y. 2011).  In addition, "[c]ourts have consistently held that 'endangerment' means a threatened or potential harm and does not require proof of actual harm."  *Dague*, 935 F.2d at 1356.  "[T]he combination of the word 'may' with the word 'endanger,' both of which are probabilistic, leads us to conclude that a reasonable prospect of future harm is adequate to engage the gears of RCRA § 7002(a)(1)(B) so long as the threat is near-term and involves

potentially serious harm." *Me. People's All. v. Mallinckrodt, Inc.*, 471 F.3d 277, 279 n.1 (1st Cir. 2006) ("[I]f there is a reasonable prospect that a carcinogen released into the environment today may cause cancer twenty years hence, the threat is near-term even though the perceived harm will only occur in the distant future."). In analyzing this element of a RCRA endangerment claim, consideration is given to RCRA's broad language and remedial purpose. *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248, 259 (3d Cir. 2005) ("[G]iven RCRA's language and purpose, Congress must have intended that if an error is to be made in applying the endangerment standard, the error must be made in favor of protecting public health, welfare and the environment." (quotation omitted)). So too here Plaintiff has plausibly alleged an "endangerment" that is also "substantial" in light of the contamination and presence of TCE, a potential carcinogen, and potential for migration and harm at Plaintiff's facility. Plaintiff contends that because no remediation efforts, including the requested installation of an SSDS, focused on Jefferson Park, the harm identified by the NYSDEC in 2018 was not abated and remains a significant threat to human health on Plaintiff's property.

Further, the cases relied upon by Defendant do not justify the relief it seeks. For example, while Defendant claims that the case of *Leese v. Lockheed Martin Corp.*, No. 11-5091 (JBS/AMD), 2014 WL 3925510 (D.N.J. Aug. 12, 2014), is "instructive here," (Dkt. 41-2 at 14), that decision arose in the context of a summary judgment motion. Although at summary judgment the *Leese* court determined that plaintiffs could not meet the "imminent and substantial endangerment requirement" of a RCRA claim, notably, a prior motion to dismiss the RCRA claim in the same case was denied. *See Leese*, 2012 WL

1224573, at *1 (D.N.J. Apr. 11, 2012).[2]  Thus, Leese does not direct the result Defendant seeks.

In sum, Plaintiff has alleged a serious risk of substantial endangerment as a result of Defendant's discharge of TCE and other volatile organic chemicals causing a continuing off-site groundwater and soil vapor contamination emanating through the Jefferson Park senior housing facility.  Defendant raises legitimate questions about whether Plaintiff can prove that exposure to the alleged contamination is harmful and is occurring or may reoccur in the reasonably foreseeable future or whether Defendant's remediation under the oversight of NYSDEC was sufficient, but those are questions best answered after discovery.  Taking Plaintiff's allegations as true, and affording deference to RCRA's remedial purpose, the Court concludes that Plaintiff has plausibly alleged that Defendant's actions "may present an imminent and substantial endangerment to health or the environment."  42 U.S.C. § 6972(a)(1)(B).  Defendant's motion is therefore denied as to this cause of action.[3]

---

[2]      Other cases cited by Defendant also arise from summary judgment proceedings and similarly do not direct judgment on the pleadings at this time.  *See Simsbury-Avon Pres. Club, Inc.*, 575 F.3d at 214-15 (affirming summary judgment where plaintiff's evidence did not "indicate anything more than a speculative prospect of future harm" or "include sufficient information from which a reasonable jury could find that the potential harm at issue rises to the level of a serious endangerment); *Lewis*, 786 F. Supp. 2d at 710 (granting summary judgment on plaintiff's RCRA claim where plaintiffs failed to demonstrate imminent and substantial endangerment).

[3]      Because Defendant's motion for judgment on the pleadings on Plaintiff's RCRA claim is denied, Defendant's related request for attorney and expert witness fees on grounds that Plaintiff's claim is "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so," is similarly denied.  (Dkt. 41-2 at 19).

**B.    CERCLA § 107(a), 42 U.S.C. § 9607(a)**

CERCLA was enacted in 1980 to address the environmental and health risks that result from industrial pollution, and its "primary purposes are axiomatic: (1) to encourage the timely cleanup of hazardous waste sites; and (2) to place the cost of that cleanup on those responsible for creating or maintaining the hazardous condition." *Seggos v. Datre*, No. 17 CV 2684 (MKB)(LB), 2024 WL 4120401, at *2 (E.D.N.Y. July 18, 2024) (quoting *Price Trucking Corp. v. Norampac Indus., Inc.*, 748 F.3d 75, 79 (2d Cir. 2014), *report and recommendation adopted*, 2024 WL 3823493 (E.D.N.Y. Aug. 14, 2024)); *Old Gate Partners, LLC v. Paddock Enters., LLC*, No. 3:18-CV-01657 (JCH), 2025 WL 2618606, at *8 (D. Conn. Sept. 9, 2025) ("CERCLA is a 'broad remedial statute' that was designed to ensure "those responsible for any damage, environmental harm, or injury from chemical poisons bear the costs of their actions." (quoting *B.F. Goodrich v. Betkoski*, 99 F.3d 505, 514 (2d Cir. 1996))).   "Under CERCLA, a party covered by the statute is liable for certain costs and monetary damages resulting from a release of hazardous substances."   *Read v. Corning Inc.*, 351 F. Supp. 3d 342, 360 (W.D.N.Y. 2018).

"Section 107 of CERCLA . . . allows a party to 'seek reimbursement for all removal or remedial costs associated with . . . hazardous materials on [contaminated] property." *ELG Utica Alloys, Inc. v. Niagara Mohawk Power Corp.*, 144 F.4th 360, 367-68 (2d Cir. 2025) (quoting *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 120-21 (2d Cir. 2010)).   "A prima facie cause of action under CERCLA requires a plaintiff to establish: (1) defendant fits one of the four classes of responsible parties outlined in § 9607(a); (2) the site is a facility; (3) there is a release or threatened release of hazardous

substances at the facility; (4) the plaintiff incurred costs responding to the release or threatened release; and (5) the costs and response actions conform to the National Contingency Plan." *Town of Hempstead v. United States*, 776 F. Supp. 3d 1, 10 (E.D.N.Y. 2025) (quoting *B.F. Goodrich*, 958 F.2d at 1198)).  "In addition, section 107(a) also requires that (6) the response costs incurred were 'necessary.'" *Old Gate Partners, LLC*, 2024 WL 3520168, at *15 (quoting *Syms v. Olin Corp.*, 408 F.3d 95, 101 (2d Cir. 2005)). The Second Circuit has also noted that "[g]enerally, response costs are liberally construed under CERCLA." *W.R. Grace & Co.-Conn. v. Zotos Intern., Inc.*, 559 F.3d 85, 92 (2d Cir. 2009).

Defendant argues that because Plaintiff cannot satisfy the fourth and fifth elements of its prima facie case, its CERCLA claim must be dismissed.  (Dkt. 41-2 at 19). Specifically, Defendant contends that all the response costs alleged by Plaintiff in its amended complaint are conclusory and that Plaintiff has not alleged the existence of costs necessary and consistent with the National Contingency Plan, as required.  The Court disagrees.

In its amended complaint, Plaintiff alleges that it incurred environmental consultant and legal costs to investigate the potential threats to human health and to advocate its position.  Specifically, it alleges that it created a proposed work plan dated July 25, 2018, with a proposal for additional soil borings, monitoring wells, and sampling to assess the extent of the contamination, prepared comments in response to the RAAR on October 5, 2020, prepared comments on the draft Remedial Action Work Plan on July 16, 2021, and drafted objections to the issuance of a Certificate of Completion on December 19, 2023.

(Dkt. 32 at ¶¶ 36, 49, 55, 63, 66, 98).  Plaintiff further alleges that "[a]ll response costs incurred . . . have been consistent with the National Contingency Plan."  (*Id.* at ¶ 99).

Plaintiff has sufficiently alleged that its legal and consulting costs are recoverable response costs and that it has adequately pleaded the elements of a § 107 claim.  *See Yankee Gas Servs. Co. v. UGI Utils., Inc.*, 852 F. Supp. 2d 229, 242 (D. Conn. 2012) (holding that costs incurred in conducting three studies to assess environmental damage were recoverable response costs, stating that "[b]ecause 'initial monitoring, assessment, and evaluation expenses are recoverable even absent any subsequent recoverable response costs,' the costs of [the studies] are all found to be 'necessary costs' 'consistent with the national contingency plan,' as CERCLA requires.");  *City of New York v. Chem. Waste Disposal Corp.*, 836 F. Supp. 968, 980 (E.D.N.Y. 1993) ("To establish the final element of the *prima facie* case for liability under CERCLA, the City must show that it has incurred "necessary response costs" which are "consistent with the NCP." 42 U.S.C. § 9607(a)(4)(B).  The costs of initial investigation and monitoring of a release are recoverable, however, without such a showing.").[4]  Further, allegations regarding consistency with the National Contingency Plan, akin to those pleaded here, have been considered sufficient by other courts.  *Brooklyn Union Gas Co. v. Exxon Mobil Corp.*, 554

---

[4]    Defendant cites *Waste Mgmt. of Alameda Cnty., Inc. v. E. Bay Reg'l Park Dist.*, 135 F. Supp. 2d 1071 (N.D. Cal. 2001), in support of its argument that "Plaintiff's costs for environmental consultants and attorneys are not recoverable," because they played no role in the formulation of the remediation plan and "such costs were precisely the 'duplicative . . . wasteful, or otherwise unnecessary' costs as proscribed by the court in *Waste Management of Alameda County*." (Dkt. 41-2 at 21).  Importantly, the *Waste Management* case was a decision following a bench trial.  It therefore does not hold that such costs are *per se* unrecoverable, as Defendant's argument seems to suggest.

F. Supp. 3d 448, 463-64 (E.D.N.Y. 2021) ("District courts in the Second Circuit have generally found that 'an allegation that [a] plaintiff has incurred and will continue to incur expenses and costs [consistent with the NCP]. . . sufficiently allege[s] recoverable response costs' under section 107." (quoting *105 Mt. Kisco Assocs. LLC v. Carozza*, No. 15 CIV. 5346 (NSR), 2017 WL 1194700, at *22 (S.D.N.Y. Mar. 30, 2017))).

As a result, taking the facts alleged by Plaintiff as true, the Court concludes that Plaintiff has plausibly alleged the existence of necessary response costs in a manner sufficient to survive Defendant's motion.   Defendant's motion for judgment on the pleadings as to Plaintiff's CERCLA claim is accordingly denied.

### C.    State Law Private and Public Nuisance Claims

"There are two types of nuisance actions in New York State, public nuisance and private nuisance."  *Hicksville Water Dist. v. Philips Elecs. N. Am. Corp.*, No. 2:17-CV-04442 (ADS)(ARL), 2018 WL 1542670, at *7 (E.D.N.Y. Mar. 29, 2018).   "A public nuisance under New York law exists when there is a substantial interference with a public right."  *Johnson v. Bryco Arms*, 304 F. Supp. 2d 383, 390 (E.D.N.Y. 2004).  By contrast, "[a] private nuisance threatens one person or a relatively few, an essential feature being an interference with the use or enjoyment of land."  *Copart Indus., Inc. v. Consol. Edison Co. of N.Y.*, 41 N.Y.2d 564, 568 (1977) (citation omitted); *see Scribner v. Summers*, 84 F.3d 554, 559 (2d Cir. 1996) (same).   "A nuisance is the actual invasion of interests in land, and it may arise from varying types of conduct."  *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 N.Y.2d 280, 292 (2001).

Defendant first raises a threshold challenge to the viability of Plaintiff's nuisance claims on the ground that the claims are untimely. Specifically, Defendant argues that CPLR 214-c establishes a three-year statute of limitations and to the extent Plaintiff seeks damages, its claims are time-barred. Plaintiff does not dispute that the statute of limitations may preclude recovery of its pre-2021 environmental consultant costs, but argues that this limitation does not bar the nuisance claims in their entirety because Plaintiff alleges continuing harm and requests injunctive relief, which fall outside of CPLR 214-c's time bar. (*See* Dkt. 43 at 20 ("While the three-year limitation on damages claims may apply to Plaintiff's pre-2021 environmental consultant costs, the off-site Contamination from the Plume emanating through the Jefferson Park property is continuing unabated, which is resulting in a diminution of the Jefferson Park property value in the amount of $1 million based on the results of a recent appraisal and continues to cause Plaintiff to incur costs for environmental consultants and the anticipated installation of the Jefferson Park SSDS to mitigate the potential impacts to human health from the soil vapor Contamination.")).

The Court agrees that Plaintiff's allegations of a "continuing harm" and request for injunctive relief support viable and timely public and private nuisance claims. *See Webster Golf Club, Inc. v. Monroe Cnty. Water Auth.*, 219 A.D.3d 1136, 1141 (2023) ("The 'continuing wrong doctrine' applies in certain cases such as nuisance or continuing trespass where the harm sustained by the complaining party is not exclusively traced to the day when the original objectionable act was committed. However, [t]he doctrine may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct." (internal quotations and citations omitted)); *see also Town of Oyster Bay v.*

*Occidental Chem. Corp.*, 987 F. Supp. 182, 210 (E.D.N.Y. 1997) ("Accordingly, to the extent that the Town seeks an order directing the defendants to carry out any remediation as may be needed in the future, such relief would not be in the nature of damages and is consequently not barred by C.P.L.R. 214-c."); *Suffolk Cnty. Water Auth. v. Dow Chem. Co.*, 121 A.D.3d 50, 59 (2d Dep't 2014) ("If a cause of action to recover damages is time-barred pursuant to CPLR 214-c, the plaintiff could still rely on the continuing wrong exception to seek injunctive relief, since CPLR 214-c only applies to actions for damages and not actions for injunctive relief.").[5]

Accordingly, to the extent Defendant's motion seeking judgment on the pleadings seeks dismissal of Plaintiff's nuisance claims on statute of limitation grounds, that portion of the motion is denied.  The Court will turn to the merits of each claim.

### 1. Private Nuisance

"Under New York law, a private nuisance . . . must affect a relatively small number of people.  If not, the wrong becomes a public nuisance." *Baker v. Saint-Gobain Performance Plastics Corp.*, 232 F. Supp. 3d 233, 247-48 (N.D.N.Y. 2017) (citations omitted); *see Taunus Corp. v. City of New York*, 279 F. Supp. 2d 305, 312 n.5 (S.D.N.Y. 2003) ("I also question whether the plaintiffs' claim can be characterized as a private nuisance, given that the conduct complained of affected a large group of people, and not

---

[5]    Because the Court concludes that Plaintiff's nuisance claims are not subject to dismissal in their entirety on statute of limitation grounds, it need not resolve on the instant motion the exact remedies remaining available to Plaintiff on the claim.  Resolution of these questions is more appropriate at a later stage of the case in light of the many factual issues at play at this time which complicate, for example, the applicability of the continuing harm doctrine to Plaintiff's claims.

just one person or a small number of persons."); *Cedar & Wash. Assocs., LLC v. Bovis Lend Lease LMB, Inc.*, 95 A.D.3d 448, 449 (1st Dep't 2012) (the private nuisance claim "fails because the alleged nuisance affects a wide area and adjacent properties").

A claim for private nuisance under New York law "may be brought under the theory that a defendant intentionally interfered with others' right to enjoy their land or that a defendant's negligence caused an interference with others' right to enjoy their land." *Cangemi v. United States*, 13 F.4th 115, 136 (2d Cir. 2021). "To state a claim for private nuisance, a plaintiff must show that the conduct at issue 'is a legal cause of the invasion of the interest in the private use and enjoyment of land and such invasion is (1) intentional and unreasonable, (2) negligent or reckless, or (3) actionable under the rules governing liability for abnormally dangerous conditions or activities.'" *Harvey v. Permanent Mission of the Republic of Sierra Leone to the United Nations*, No. 21 CIV. 4368 (ER), 2022 WL 2392101, at \*8 (S.D.N.Y. July 1, 2022) (quoting *Copart Indus., Inc. v. Consol., Edison Co. of N.Y.*, 41 N.Y.2d 564, 569 (1977)), *aff'd,* 97 F.4th 70 (2d Cir. 2024).

Defendant initially argues that Plaintiff's private nuisance claim is not sustainable because Plaintiff's property was not the only property allegedly affected and further, that Plaintiff's property is a multi-unit residence with over 60 units, two facts that preclude Plaintiff's ability to meet the requirement of a private nuisance claim that the harm affects one person or a small number of persons. But Defendant cites no authority for the position that where a single property houses numerous residents on that same property, a private nuisance claim is unavailable. Indeed, other cases suggest otherwise. *See S. Buffalo Dev., LLC v. PVS Chem. Sols., Inc*., 675 F. Supp. 3d 320, 327 (W.D.N.Y. 2023) ("At the same

time, 'relatively few' can mean more than one plaintiff or be an interference with more than one discrete property."); *White Plains Hous. Auth. v. BP Prods. N. Am. Inc*., No. 17-CV-6250 (NSR), 2022 WL 17822560, at *1 (S.D.N.Y. Dec. 19, 2022) (allowing private nuisance claim on behalf of housing authority property containing five public housing apartment buildings to proceed); *61 W. 62 Owners Corp. v. CGM EMP LLC*, 86 A.D.3d 403, 403 (1st Dep't 2011) (permitting owner of a residential cooperative apartment building to assert private nuisance action against owners of an adjacent building).  Further, although the harm allegedly affected other properties in addition to Plaintiff's, Plaintiff has nonetheless established that it suffered injuries unlike the other affected properties, in light of the lack of remediation provided to it.  At this stage of the proceedings, that is sufficient to plausibly allege this element of a private nuisance claim.

Defendant next argues that Plaintiff cannot satisfy the other requisite elements because any alleged interference is not substantial in nature, intentional in origin, or unreasonable in character.  Defendant's arguments in this regard essentially urge the Court to accept its version of events and focus on the fact that Defendant engaged in significant investigation and remediation of the Qualitrol site under the supervision of the NYSDEC. But at this stage of the proceedings, that is not the appropriate standard.  Moreover, to the extent that Defendant relies on *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 94 (2d Cir. 2000), for the proposition that solvent spills resulting from "simple and small-scale accidents or carelessness" were outside the scope of conduct contemplated by New York nuisance law, (*see* Dkt. 41-2 at 26), that conclusion was reached by the *Gussack* court following a jury trial and not, as here, on a motion for judgment on the pleadings.

Accordingly, because Plaintiff has sufficiently alleged that Defendant is responsible for a significant threat to human health from the soil vapor contamination and resulting plume that remains unabated on Plaintiff's property and that Defendant has failed to promptly and adequately investigate and remediate the harm, Plaintiff has sufficiently alleged a claim for private nuisance.

Accordingly, Defendant's motion for judgment on the pleadings as to this claim is denied.

### 2. Public Nuisance

Alternatively, Plaintiff alleges a claim for public nuisance. "A public nuisance exists for conduct that amounts to a substantial interference with the exercise of a common right of the public, thereby offending public morals, interfering with the use by the public of a public place or endangering or injuring the property, health, safety or comfort of a considerable number of persons." *532 Madison Ave.*, 96 N.Y.2d at 292. "[T]he historical purpose of the doctrine of public nuisance was primarily to protect the public from harm or danger; the same is equally true of the modern tort of public nuisance." *N.A.A.C.P. v. AcuSport, Inc.*, 271 F. Supp. 2d 435, 481 (E.D.N.Y. 2003).

"Generally, '[a] public nuisance is actionable by a private person only if it is shown that the person suffered special injury beyond that suffered by the community at large.'" *Janki Bai Sahu v. Union Carbide Corp.*, 528 F. App'x 96, 101 n.4 (2d Cir. 2013) (alteration in original) (quoting *532 Madison Ave.*, 96 N.Y.2d at 292). "In this way, a private wrong may be distinguished from a common injury to the public, and a private right of action is restored." *Baker*, 232 F. Supp. 3d at 248 (citing *Kavanagh v. Barber*, 131 N.Y. 211, 214

(1892)).  "This principle recognizes the necessity of guarding against the multiplicity of lawsuits that would follow if everyone were permitted to seek redress for a wrong common to the public."  *532 Madison Ave.*, 96 N.Y.2d at 292.

Here, Plaintiff alleges the contamination at the Qualitrol site has interfered with the groundwater, air, and soil rights of the surrounding area but that there are special damages impacting the select group of properties in the immediate vicinity.  It further alleges that as a property owner living adjacent to the Qualitrol site, it has suffered additional injuries that differ from those sustained by the other adjoining properties because Plaintiff did not receive the same mitigation efforts enjoyed by the other adjacent properties.  As a result, it contends that its property has diminished in value, in addition to the other costs it has reportedly extended.

Diminished property values may constitute a 'special injury' under New York law.  *D'Amico v. Waste Mgmt. of New York, LLC*, No. 6:18-CV-06080 EAW, 2019 WL 4259549, at *5 (W.D.N.Y. Sept. 9, 2019); *see also Agoglia v. Benepe*, 84 A.D.3d 1072, 1077 (2d Dep't 2011) (finding that "the petitioner adequately stated a cause of action to abate a public nuisance" where, "in addition to the alleged environmental injuries, the petition alleged that the dunes adversely affected property values on the subject streets, a harm not suffered by the community at large"); *Scheg v. Agway, Inc.*, 229 A.D.2d 963, 964 (4th Dep't 1996) ("[T]heir complaint, insofar as it alleges that the value of their property was diminished as a result of its proximity to the landfill, does state a cause of action."); *Ass'n for Cmty Reform Now ("Acorn") v. Bloomberg*, 13 Misc. 3d 1209(A), at *17 (N.Y. Sup. Ct. 2006) ("The alleged depreciation in plaintiffs' property values, if proven, would

constitute special injury resulting from the air pollution, noise pollution, odor and traffic that allegedly would arise out of the proposed [Marine Transfer Station].").

The allegations in the amended complaint, taken as true, establish that Plaintiff has plausibly alleged a public nuisance claim.  While Plaintiff has alleged like injuries to other properties surrounding the Qualitrol site, its harm is distinct from the deprivation of the rights to clean air and the unimpaired enjoyment of public spaces suffered by the community at large.  *See Iannucci v. City of New York*, No. CV-02-6135 (CPS), 2006 WL 1026432, at *4 (E.D.N.Y. Apr. 19, 2006) ("While the entire community is injured in that its access to public streets and sidewalks is restricted due to defendants' illegal parking, plaintiff has sustained 'special injuries' in that his driveways and parking lots are blocked and the value of his properties has decreased as a result of the parking."); *see generally Black v. George Weston Bakeries, Inc.*, No. 07-CV-853S, 2008 WL 4911791, at *7 (W.D.N.Y. Nov. 13, 2008) ("Plaintiffs have pleaded special damages because they allege that [d]efendants' conduct caused their properties to diminish in value.  As a result, [p]laintiffs have standing to bring a public nuisance suit." (citation omitted)); *see also Ouellette v. Int'l Paper Co.*, 602 F. Supp. 264, 274 (D. Vt. 1985) ("Plaintiffs allege . . . that the discharges from defendant's mill 'interfere with [p]laintiffs' use and enjoyment of their property and have decreased the market value and rental value of their property.'  Such an allegation is sufficient to state a private cause of action for a 'nuisance' which might generally be classified as 'public.'"), *aff'd*, 776 F.2d 55 (2d Cir. 1985), *aff'd in part, rev'd in part on other grounds*, 479 U.S. 481 (1987); *see also Francis v. Schoellkopf*, 53 N.Y. 152, 154 (1873) (a nuisance was actionable where "offensive smells" made the plaintiff

"unable to rent one of her houses at all for a portion of the time" and required her to rent another "for a less[er] sum than she could have otherwise obtained," even though "other houses in the vicinity" were similarly affected).

In short, because at least at this early stage, Plaintiff has plausibly alleged the requisite elements of a public nuisance claim, Defendant's motion for judgment on the pleadings as to this claim is denied.

### D. Declaratory Judgment

Finally, Defendant argues that because Plaintiff's substantive claims fail, so too must its declaratory judgment claim. But because, for the reasons set forth herein, Defendant's motion for judgment on the pleadings is denied as to Plaintiff's other claims, the motion must also be denied as to Plaintiff's claim for declaratory judgment.

### CONCLUSION

For the forgoing reasons, Defendant's motion for judgment on the pleadings (Dkt. 41) is denied.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      September 22, 2025
            Rochester, New York